## AFFIDAVIT IN SUPPORT OF COMPLAINT AND ARREST WARRANT

I, Andrew Cohen, a Special Agent with the Federal Bureau of Investigation ("FBI"), being duly sworn, hereby depose and state that the following is true to the best of my information, knowledge and belief:

## INTRODUCTION AND AGENT BACKROUND

1. Your Affiant is a Special Agent with the Federal Bureau of Investigation ("FBI") and has been since 2014.  Your Affiant is currently assigned to the Denver Division of the FBI, and specifically to the Southern Colorado Safe Streets Task Force.  Your Affiant investigates drug trafficking in the normal course of his duties and is familiar with the facts of this case.

2. As part of my duties, your Affiant investigates criminal violations relating to the violation of federal firearms laws and the distribution of illegal drugs.  Your Affiant has participated in multiple narcotics investigations and has recovered heroin, methamphetamine, cocaine, and other illegal drugs during the course of his career.

3. Your Affiant has participated in the debriefing of individuals involved in narcotics investigations involving the possession and distribution of illegal drugs.  Through these and other investigations, and debriefings, your Affiant has become familiar with the methodology of illegal drug distribution.

4. Your Affiant has received training and instruction related to illegal drugs and controlled substance laws.  Your Affiant also works with other law enforcement Officers with decades of narcotics experience and your Affiant benefits from their knowledge.

## AFFIDAVIT PURPOSE

5. This affidavit is submitted to support a criminal complaint and application for arrest warrant for and against ARISTEO ROACHO JR.

6. Your Affiant submits that probable cause exists that on or about August 5, 2019, in the State and District of Colorado, the defendant, ARISTEO ROACHO JR., did knowingly and intentionally possess with intent to distribute 500 grams and more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(viii).

7. Because this affidavit is submitted only to obtain a criminal complaint and arrest warrant, I have set forth only those facts I believe are necessary to establish probable cause for the above-mentioned offense in paragraph six.

8. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement officials, and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested arrest warrant and does not set forth all of my knowledge about this matter.

### INVESTIGATION BEGINS: CONFIDENTIAL SOURCE INFORMATION RECEIVED

9. In August of 2019, the FBI developed a confidential human source ("CHS1") with substantial knowledge of the distribution of illegal narcotics, particularly methamphetamine, heroin, and cocaine.

10. CHS1 was recently encountered in possession of methamphetamine, heroin, and cocaine, and firearms. CHS1 is a convicted felon. CHS1 has been convicted of theft, felony menacing, and drug related charges. Your Affiant has not included the specific court cases related to these charges to help protect CHS1's identity. CHS1 is cooperating in the hopes of receiving consideration in relation to pending criminal charges regarding illegal drug distribution and firearms violations.

11. CHS1 provided information to date that the FBI corroborated and verified. For instance, he/she has identified phone numbers as belonging to other drug sources of supply and those phone numbers link to open drug investigations.

12. CHS1 has positively identified other drug dealers already known to the FBI and who are part of active drug investigations. CHS1's information was also compared to other confidential source reporting and historical information provided by two separate police departments.

13. Based on that comparison, CHS1 appears to have provided reliable information and your Affiant is not aware of any false information CHS1 has provided. Additionally, your Affiant is not aware of any vendetta or grudge that CHS1 holds against any person(s) named in this affidavit.

14. Prior to CHS1's cooperation, he/she was known by investigators to be actively involved in the distribution of illegal drugs, namely methamphetamine and heroin. CHS1 stated that he/she would sell multiple pounds of heroin over a several week period of time. Based on CHS1's involvement in drug trafficking, your Affiant submits that CHS1 is familiar with many different types of illegal drugs, the tradecraft of large volume drug dealers, the street prices of illegal drugs, the identification of illegal drugs, and the types of equipment used in furtherance of illegal drug sales.

### "JUNEBUG," A/K/A ARISTEO ROACHO, JR.

15. CHS1 stated that he/she had purchased illegal drugs, including, but not limited to heroin, multiple times from an individual named "Junebug." The multiple purchases of illegal drugs from Junebug were not at the direction of law enforcement and spanned over a several month period. CHS1 was able to show investigators text messages from prior communication with Junebug and the information contained in those messages was consistent with what CHS1 told law enforcement. CHS1 also stated that Junebug also sells cocaine and methamphetamine.

16. CHS1 was not familiar with Junebug's government name. Investigators, through other investigations, were familiar with an individual named ARISTEO ROACHO JR. (DOB: 02/05/1992) that uses a moniker of Junebug. Within Colorado Springs Police Department ("CSPD") databases, ROACHO is documented as a confirmed "2PL," or "Poco Peros Locos" gang member, which is a Sureno gang set.

17. Officers conducted logical database checks related to ROACHO and learned that ROACHO is a convicted felon. ROACHO's criminal history will be discussed below in more detail.

18. CHS1 was shown a prior booking photograph of ROACHO without any identifying information. CHS1 was able to positively identify Junebug.

19. CHS1 stated that Junebug drives a grey/silver Dodge and believed it to be a pickup truck. Officers conducted a records check related to vehicles registered to ROACHO and learned ROACHO had a grey 2012 Dodge Durango bearing Colorado license plate OAQ402 registered to him.

20. For above-stated reasons, your Affiant considers the information provided by CHS1 to be reliable.

## ROACHO ATTEMPTS TO FLEE FROM POLICE

21. CHS1 informed investigators that Junebug would be in the vicinity of 900 E. Fillmore Ave. on August 5, 2019 and was suspected to have illegal drugs in his possession, specifically three pounds of methamphetamine.

22. Based on that information, investigators in undercover and unmarked vehicles conducted static surveillance in the area of 900 E. Fillmore Ave, Colorado Springs, Colorado on August 5, 2019. During that surveillance, investigators observed the grey Dodge Durango bearing Colorado license plate OAQ403, registered to ROACHO, with a registration address of 2546 E. Uintah in Colorado Springs, Colorado. Investigators were familiar with this specific vehicle prior to observing the vehicle at 900 E. Fillmore Ave.

23. Investigators observed a hispanic male in the driver's seat that matched ROACHO's physical description. Investigators also observed that there were other occupants in the vehicle.

24. The Durango circled a parking lot in the vicinity of 900 E. Fillmore Ave. several times then remained parked in the lot for several minutes. The Durango ultimately departed the parking lot. During the time the vehicle was parked, no one got in or out of the vehicle. The behavior of the occupants of the vehicle was suspicious, primarily because the vehicle appeared to be waiting for something/somebody, or checking the area. When that event did not happen, the Durango departed the area. Your Affiant knows from his training and experience that drug dealers will often exhibit this type of behavior. Investigators followed the vehicle as it left the parking lot.

25. An unmarked Police vehicle ("Police Vehicle 1") later approached ROACHO's Durango head-on at a stop sign in the area of 1st St. and Arcadia St.

26. Police Vehicle 1 contained four CSPD Officers from the Tactical Enforcement Unit who were all wearing helmets and large clearly identifiable "POLICE" markings on their chests.

27. The driver of Police Vehicle 1 had not yet activated the red and blue emergency lighting but made eye contact with ROACHO. The driver of Police Vehicle 1 believed ROACHO recognized the occupants and the vehicle as law enforcement. The driver of Police Vehicle 1 was able to identify ROACHO based on his prior booking photo.

28. Just as Police Vehicle 1 was pulling in front of the Durango, a second unmarked Police Vehicle ("Police Vehicle 2") came from behind ROACHO with its red and blue emergency lighting activated.

29. At that point, ROACHO attempted to flee and struck the front of Police Vehicle 1.

30. Law enforcement was able to stop ROACHO and detain all vehicle occupants without injury.

31. Police Vehicle 1 and ROACHO's Durango suffered damages due to ROACHO's attempt to flee and were not drivable.

32. The driver of the Durango was ROACHO.

33. The two other occupants are individuals identified as N.E and D.R.

34. N.E. and D.R. were detained for a short period and subsequently questioned by investigators.

35. N.E. and D.R. stated they knew nothing about drugs being sold and did not know why they had stopped at 900 E. Fillmore. N.E. and D.R. were not known to law enforcement prior to this encounter and investigators did not believe them to be involved in illegal narcotics distribution. N.E and D.R were released.

### K9 ALERT ON ROACHO'S VEHICLE

36. At approximately 8:10 p.m., CSPD K9 Officer Donovan and his K9 partner "Tank" arrived on scene to conduct an exterior sniff of the vehicle.

37. K9 "Tank" is currently certified by the National Police Canine Association in the detection of the following scents/odors: (1) heroin; (2) methamphetamine; (3) cocaine; and, (4) MDMA (*ecstasy*).

38. Officer Donovan advised that K9 Tank gave positive alerts for the presence of an unknown narcotic odor on the exterior of both the driver and passenger side doors of the vehicle.

39. Pending the issuance of a search warrant, law enforcement officers stayed with the vehicle during the tow process and maintained visual control of the vehicle during the tow. The Randy's Tow truck driver did have to enter the driver's side of the vehicle, but he did not remove or add anything to the interior of the car, and was under close supervision by a CSPD Detective.

40. The vehicle was towed to the CSPD Falcon Substation where it was secured behind a gated area. Visual control of the vehicle was continued.

### SEARCH WARRANT EXECUTION ON ROACHO'S VEHICLE

41. On August 5, 2019, law enforcement officers applied for and received a State of Colorado search warrant for ROACHO's Durango.

42. On August 5, 2019, at approximately 9:40 p.m., law enforcement officers executed the search warrant.

43. Law enforcement officers recovered a pink bag on the floorboard behind the driver's seat containing three separate gallon size plastic bags, each with a white crystalline substance, consistent with methamphetamine. Investigators also recovered two smaller baggies with a white power substance, consistent with cocaine. (*See picture below*).



### WEIGHT AND FIELD TESTS OF METHAMPHETAMINE

44. FBI Task Force Officer ("TFO") Paulsen weighed the three gallon size plastic bags, and found the weights to be approximately 454 grams, 458 grams, and 452 grams.

45. Your Affiant knows from training and experience that there are approximately 454 grams in a pound, which is a common weight for the distribution of methamphetamine.

46. Law enforcement officers conducted field tests of suspected methamphetamine from each of the three bags. The tests resulted in a presumptive positive result for the presence of methamphetamine.

47. Your Affiant submits that the weights of the methamphetamine is consistent with the information provided by CHS1 prior to observing ROACHO's vehicle. (*See paragraph 21*).

48. Based on your Affiant's training and experience, approximately 1,364 grams of methamphetamine is not consistent with a typical user quantity of drugs and is indicative of distribution.

49. Furthermore, the presence of another controlled substance, *i.e.*, cocaine, and the specific quantity of the controlled substance *(approximately 58 grams, see paragraphs 51 to 53 below)*, is indicative that ROACHO possessed the methamphetamine with the intent to distribute it.

### WEIGHT AND FIELD TESTS OF COCAINE

50. TFO Paulsen weighed the two smaller baggies which contained suspected cocaine. The two baggies weighed approximately 29 grams each.

51. Your Affiant knows from training and experience that there are approximately 28 grams to an ounce, which is a common weight for the distribution of cocaine.

52. Law enforcement officers conducted field tests on both baggies of suspected cocaine. The tests resulted in a presumptive positive result for the presence of cocaine.

53. Based on your Affiant's training and experience, 58 grams of cocaine is not consistent with a typical user quantity of drugs and is indicative of distribution.

54. Furthermore, the presence of another controlled substance, *i.e.*, methamphetamine, and the specific quantity of the controlled substance *(approximately 1,364 grams, see paragraphs 44 to 48 above)*, is indicative that ROACHO possessed the cocaine with the intent to distribute it.

## ROACHO DID NOT MAKE ANY STATEMENTS

55. On August 5, 2019, your Affiant attempted to speak with ROACHO.

56. ROACHO did not ask for an attorney, but he did not want to speak, and requested that law enforcement officers just take him to jail.

57. ROACHO made no admissions to the possession of the methamphetamine or cocaine.

## ROACHO IS A CONVICTED FELON

58. Your Affiant has reviewed a criminal history for ROACHO, as it relates to his prior felony convictions. Your Affiant learned the following information. The information below is not intended to account for the entirety of ROACHO's criminal history.

59. In El Paso County Court Case 2012CR3550, ROACHO pled guilty to possession with intent to distribute a schedule II controlled substance, a Class 3 Felony, and was sentenced to four years of probation. A court later revoked the original probationary sentence and sentenced ROACHO to five years Community Corrections on April 12, 2014.

## CONCLUSION

60. Based on the aforementioned information, your Affiant submits that probable cause exists that on or about August 5, 2019, in the State and District of Colorado, the defendant, ARISTEO ROACHO JR., did knowingly and intentionally possess with intent to distribute 500 grams and more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(viii).

61. As such, your Affiant respectfully requests that the Court issue a criminal complaint and a corresponding arrest warrant for and against Aristeo ROACHO, Jr.

I, Andrew Cohen, Special Agent with the Federal Bureau of Investigation ("FBI"), being duly sworn, hereby depose and state that the above-mentioned information is true to the best of my information, knowledge and belief.

*/s/ Andrew Cohen*
Andrew Cohen
Special Agent
Federal Bureau of Investigations

**Affidavit reviewed and submitted by Jason St. Julien, Assistant United States Attorney.**

Sworn to and subscribed before me this \_\_\_7th\_\_\_ day of August, 2019.

_____

United States Magistrate Judge
District of Colorado